## Case No. 15,831.

### UNITED STATES v. MUHLENBRINK.

[1 Woods, 569.] [2]

Circuit Court, N. D. Georgia. Sept. Term, 1873.

LIMITATION OF ACTIONS—PRESIDENT'S PROCLAMATION—END OF WAR—FEDERAL COURTS IN GEORGIA.

1. The suspension of the statute of limitations provided for by the act of congress, approved June 11, 1864 (13 Stat. 123), did not continue in Georgia after the proclamation of the president, of April 2, 1866 [14 Stat. 811].

[Cited in Stoughton v. Hill, Case No. 13,501; Amy v. City of Watertown, 22 Fed. 420.]

2. The fact that no term of the United States court for the Northern district of Georgia was held until September 10, 1866, and no clerk of that court appointed until that date, did not continue the suspension of the statute until that time.

This cause was submitted upon the motion of defendant, Hans Muhlenbrink, for a new trial.

Geo. S. Thomas, Asst. U. S. Atty.

L. E. Bleckley and L. J. Gartrell, for defendant.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Before WOODS, Circuit Judge, and ERS-KINE, District Judge.

WOODS, Circuit Judge. This action was brought on the 19th of January, 1867, on the official bond of William T. Wilson, as postmaster of Atlanta, on which defendant Muhlenbrink was one of the sureties. Wilson died before suit brought, and the other surety was never served with process; Muhlenbrink was therefore sole defendant. He pleaded that the default of Wilson occurred on the 31st of December, 1859, and that the suit was not brought within two years after the cause of action accrued. The plaintiff replied that said default did not occur more than two years before the commencement of the action, after deducting the time during which the state of Georgia was in rebellion, and during which the ordinary course of judicial proceedings in the state was interrupted in consequence of the Rebellion, and that the Rebellion and interruption of judicial proceedings continued from the 19th of January, 1861, to the 10th day of September, 1866. To this replication the defendant rejoined that after the default there was an interval of more than two years before the commencement of the action, after allowing all proper deductions of time for the causes mentioned in the replication. Upon this the plaintiff took issue, the parties went to trial and the jury returned a verdict for plaintiff in the sum of $5,198 principal, and $50 interest. The court charged the jury that in computing the time during which the statute of limitations had run against plaintiff's cause of action, the period between the 19th of April, 1861, and the 10th of September, 1866, should be excluded. Defendant Muhlenbrink claims that this charge was erroneous, and on that sole ground moves for a new trial.

The question presented for decision is this: How long was the running of the statute of limitations obstructed between the 31st day of December, 1859, the date of the default of Wilson, and the 19th day of January, 1867, the date of the commencement of the action by reason of the matters alleged in the plaintiff's replication? In the state of Georgia, the late war of Rebellion began on the 19th of April, 1861, the date of the proclamation of blockade in that and six other states (12 Stat. 1258), and ended by the proclamation declaring the war closed on the 2d of April, 1866 (14 Stat. 811). The Protector, 12 Wall. [79 U. S.] 700. If the running of the statute of limitations was suspended only during the period of actual war, as that period was defined in the case of The Protector, namely, between the 19th of April, 1861, and the 2d of April, 1866, then the bar intervened before the bringing of this action, two years, one month and six days having elapsed, exclusive of the period aforesaid, after the default and before bringing of the suit.

But it is claimed in behalf of plaintiff, that all the time, from the beginning of the war on April 19, 1861, to the commencement of the first term, after the war, of the United States court for the Northern district of Georgia, on September 10, 1866, should be included in the period during which the statute was suspended. To support this claim, reliance is placed on the act of congress approved June 11, 1864 (13 Stat. 123). This act declares that, "whenever, during the existence of the present Rebellion, any action, civil or criminal, shall accrue against any person who, by reason of resistance to the execution of the laws of the United States or the interruption of the ordinary course of judicial proceeding, cannot be served with process for the commencement of said action or the arrest of such person; or whenever, after such action shall have accrued, such person cannot, by reason of such resistance to the execution of the laws of the United States, or such interruption of the ordinary course of judicial proceedings, be arrested or served with process for the commencement of the action, the time during which such person shall be so beyond the reach of legal process shall not be deemed or taken as any part of the time limited by law for the commencement of the action." 13 Stat. 123.

The claim is put forward that, because no term of the federal court was held in Northern Georgia until September 10, 1866, therefore there was such an interruption of the ordinary course of judicial proceedings as prevented the service of process. As a matter of fact, were the United States courts closed in Georgia until the 10th of September, 1866, as a consequence of the Rebellion? We think that public history, the proclamations of the president, and the conceded facts in this case, show that such was not the case. On the 17th day of June, 1865, President Johnson issued his proclamation appointing James Johnson provisional governor of Georgia, and directing that the district judge for the judicial district in which Georgia is included, proceed to hold courts within said state, in accordance with the provisions of the act of congress, and that the attorney general instruct the proper officers to libel and bring to judgment, confiscation and sale property subject to confiscation, and enforce the administration of justice within said state in all matters within the cognizance and jurisdiction of the federal courts. 13 Stat. 764. On the 2d of April, 1866, the president issued his proclamation declaring that "no organized armed resistance to the authority of the United States existed in the state of Georgia, and that the laws could be sustained and enforced therein by the proper civil authorities, and that the people of said state were well and loyally disposed." 14 Stat. 812.

The conceded facts are these: The last term of the United States court, for the Northern district of Georgia, held before the passage of the ordinance of secession, began in September, 1860, and no other term of the court was held until the 10th day of September,

1866. John Erskine was commissioned United States judge, for the districts of Georgia, on July 10, 1865, and soon after qualified and entered upon the discharge of his duties. A marshal was appointed during the same year, for the two districts into which the state was divided; .but no clerk was appointed for the Northern district until the 10th day of September, 1866. The first term of a United States court actually held in Georgia after the Rebellion was held in the Southern district, at Savannah, in May, 1866, and on the 16th of that month the judge, sitting in chambers at Savannah, made an order in a cause pending in the Northern district. The state courts were opened for the administration of justice in the fall of 1865, and thenceforward continued in the uninterrupted discharge of their duties. The failure of the judge to appoint a clerk is not one of the causes named in the act of congress, the existence of which suspended the running of the statute. It was the impossibility of serving process, arising from resistance to the execution of the laws, or the interruption of the ordinary course of judicial proceedings during the existing Rebellion, that suspended the running of the limitation, and that alone.

Lord Coke in his First Institute (volume 3, p. 40) says: "And therefore when the courts of justice be open, and the judges and ministers may, by law, protect men from wrong and violence, and distribute justice to all, it is said to be a time of peace. So when by invasion, insurrection, rebellion or such like, the peaceable course of justice is disturbed and stopped, so as the courts of justice be as it were, shut up, et silent leges inter arma, then it is said to be time of war. And the trial hereof is by the records and judges of the courts of justice, for by this it will appear whether justice had her equal course of proceeding at that time or no, and this shall not be tried by a jury." Tested by this passage, it seems to us that the courts of the United States were open in Northern Georgia at least as early as April, 1866. The records of the court, the proclamations of the president and the public history, of which this court will take judicial notice, all concur in establishing the fact that, at and before that time the Rebellion was subdued, the war over, peace returned, resistance to the laws at an end, and the ordinary course of judicial proceedings reestablished. If the suit of the plaintiff could not then have been brought, it must have been for some other reason than those named in the act of congress. When peace and order are restored, and judicial officers appointed, the suspension of the statute of limitations does not continue until it shall be convenient for them to act. Peace opens the courts, and a reasonable time after the end of actual hostilities having passed for the courts to resume their functions, the suspension of the statute of limitations must cease. As this action was not commenced within two years after the default, making all proper allowances

for the suspension of the statute of limitations, we think the action was barred, and that a new trial ought to be granted.